UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHEL G.B.,[1]<br>Plaintiff,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, et al.,<br>Respondents. | No. 1:26-cv-04284-TLN-AC<br>A# 203-754-003<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Michel G.B.'s ("Petitioner") First Amended Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 12.) Respondents filed an Answer to the Petition.[2] (ECF No. 15.) Petitioner filed a Reply. (ECF No. 20.) For the reasons set forth below, the Petition (ECF No. 12) is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Respondents re-incorporate their first answer into the Answer to the operative Petition. The Court considers both answers' arguments in the instant order.

## I. Factual and Procedural Background

This matter arises out of Petitioner's constitutional and statutory challenges to his civil immigration detention. (ECF No. 12.) Petitioner, a native of Cuba, entered the United States near El-Paso, Texas on or around May 20, 2019.[3] (ECF No. 12 at 1; ECF No. 6-1 at 2–3; ECF No. 6-5 at 3.) Petitioner was issued a Notice to Appear. (ECF No. 6-3.) Petitioner was detained by immigration authorities and began an application for asylum while in detention. (ECF No. 12-1 at 2.) After around two months of detention, Petitioner secured an $8000 bond and was released. (*Id.*; ECF No. 6-4; ECF No. 6-5.) Petitioner moved to New York and later to Florida where he lived and worked. (ECF No. 12 at 2.)

On or about November 23, 2023, Petitioner was arrested for several criminal offenses including felony grand theft and other theft offenses. (ECF No. 6 at 2.) On or about November 30, 2023, Petitioner was absent for an immigration hearing related to his asylum and was ordered removed *in absentia*. (ECF No. 12 at 2.) Petitioner's bond was cancelled on January 4, 2024. (ECF No. 6-6 at 1.)

The Department of Homeland Security ("DHS") moved to reopen Petitioner's immigration proceedings because he missed the hearing through no fault of his own: he was in the custody of the State of Florida. (ECF No. 6-10 at 1; ECF No. 12 at 2.) On August 26, 2024, the immigration judge ("IJ") issued an Order granting DHS's motion because "DHS established that [Petitioner] was in the custody of the State of Florida at the time of his hearing on November 30, 2023. As such, [Petitioner's] failure to appear was through no fault of his own. 8 CFR § 1003.23(b)(4)(ii)." (ECF No. 6-10 at 1–3.)

On October 18, 2025, Petitioner was arrested by local authorities for loitering/prowling. (ECF No. 6-9 at 9; ECF No. 12 at 2; ECF No. 20 at 2.) On October 20, 2025, Petitioner was placed into immigration custody. (ECF No. 12 at 2; ECF No. 6-1.) Petitioner has been detained for over a year.

---

[3] Petitioner identifies the date as "on or about May 20, 2019," whereas Respondents' records indicate that U.S. Border Patrol agents encountered Petitioner on May 25, 2019. (ECF No. 6-1 at 2–3; ECF No. 12 at 1.) This discrepancy is immaterial to the Court's analysis.

On February 12, 2026, the IJ ordered Petitioner "removed to Cuba" on the "charge(s) contained in the Notice to Appear." (ECF No. 6-11 at 3–4.) Petitioner appealed his removal order to the Board of Immigration Appeals. (ECF No. 6-12.) The appeal remains pending. (ECF No. 6 at 3.)

On June 4, 2026, while detained at the California City Detention Facility, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) Respondents answered on June 22, 2026. (ECF No. 6.) On June 26, 2026, the Court ordered counsel appointed for Petitioner in "light of the complexity of the legal issues involved and in the interest of justice." (ECF No. 7.) Counsel was appointed for Petitioner on July 6, 2026. On July 26, 2026, Petitioner filed a First Amended Petition. (ECF No. 12.)[4] Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 4.) On September 4, 2026, the magistrate judge issued a Minute Order ordering Respondents to distinguish the instant case from the court's prior orders based on the revocation of a prior release. (ECF No. 13.)

Neither party presents evidence Petitioner received a bond hearing.

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a

---

[4] In November 2026, Petitioner filed a pro se motion for a temporary restraining order and letter to the Court regarding his ongoing detention. (ECF Nos. 17, 18.) Because Petitioner was represented by counsel when he made these filings, the Court strikes them from the docket. (*See U.S. v. Gallardo*, 915 F.Supp. 216, 218 n.1 (D. Nev. 1995) (explaining a "person represented by an attorney cannot file pro se motions").

district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner puts forth four claims: (1) his detention violates Fifth Amendment procedural due process; (2) his detention violates Fifth Amendment substantive due process; (3) his arrest without cause is a final agency action that violates the Administrative Procedure Act; and (4) his detention violates U.S.C. § 1226(a).[5] (ECF No. 12 at 14–16.) Respondents argue: (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A); (2) if the Court determines § 1226(c) is inapplicable, then the appropriate remedy is a bond hearing under § 1226(a); and (3) Petitioner has failed to request a hearing pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999).[6] (ECF No. 8 at 2–6.) Respondents also argue the cases included in the Court's September 4, 2026 Minute Order are "inapposite because they do not concern individuals subject to

---

[5] The Court determines Petitioner is unlawfully detained in violation of Fifth Amendment procedural due process and must be released. Therefore, in the interest of judicial efficiency, the Court declines to review Petitioner's other bases for relief.

[6] Respondents briefly argue that Petitioner should be required to exhaust his administrative remedies by requesting a hearing pursuant to *Matter of Joseph*. (ECF No. 15 at 1.) The Court finds after consideration of the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), that prudential exhaustion is not required. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, for the reasons set forth below, seeking a *Matter of Joseph* hearing in this case would be futile and it is unlikely that the agency would correct its own mistake. *See, e.g., Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error."); *Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-03360-DAD-CKD, 2026 WL 2389805, at *1 (E.D. Cal. Aug. 17, 2026) (finding *Joseph* hearing futile where the Notice to Appear did not charge petitioner as inadmissible for a criminal offense even though government asserted 8 U.S.C. § 1226(c) as a post hoc rationalization to justify detention without a hearing). Additionally, because of the significant liberty interest at stake in this case, irreparable injury would result from requiring exhaustion. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Thus, the Court declines to require prudential exhaustion in this case.

mandatory detention under 8 U.S.C. § 1226(c)." (ECF No. 15 at 2–3.) The Court finds below Petitioner is not properly detained under 8 U.S.C. § 1226(c) and Respondents' distinguishing arguments are non-dispositive.

The Court first addresses detention authority before turning to Petitioner's Fifth Amendment procedural due process claim.

A. Detention Authority

*i. 8 U.S.C. § 1226(c)(1)(A)*

Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). (ECF No. 15 at 1–2.)

Section 1226(c)(1)(A) states the "Attorney General shall take into custody any [noncitizen] who [] is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) enumerates various categories of crimes, including, as relevant here, crimes involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Petitioner disputes his theft offenses are a crime involving moral turpitude. (ECF No. 20 at 1.)[7]

"[T]he plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2) as prerequisite to mandatory detention under that provision." *Colmenares-Pinto v. Warden of Golden State Annex ICE Det. Facility*, No. 1:26-cv-00812-DAD-SCR, 2026 WL 923804, at *2 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, 2026 WL 1430913 (E.D. Cal. May 21, 2026). Indeed, this District routinely finds that § 1226(c)(1)(A) does not authorize mandatory detention where the government has failed to charge a noncitizen with inadmissibility for an offense covered by § 1182(a)(2). *See id.*; *Miao v. Chestnut*, No. 1:26-cv-1271-KES-SKO, 2026 WL 947020, at *3 (E.D. Cal. April 8, 2026); *Lopez v. Warden, California City Det. Facility*,

---

[7] For judicial efficiency, the Court does not make a finding on the correct categorization of Petitioner's convictions relating to 8 U.S.C. § 1226(c)(1)(A) and instead determines 8 U.S.C. § 1226(c)(1)(A) is inapplicable for the reasons stated below. However, the Court highlights if Petitioner's convictions do not involve "moral turpitude," or other subsections § 1182(a)(2), then even if the Notice to Appear were cured, Petitioner would still not be subject to § 1226(c)(1)(A).

No. 1:26-cv-4852-DC-JDP, 2026 WL 2280944, at *3 (E.D. Cal. Aug. 7, 2026).

The Board of Immigration Appeals has ruled similarly, and further explains that, although the government may later cure the failure to charge the basis for mandatory detention, it must be rectified with proper notice and an opportunity to challenge detention:

> Where the ground for removal subjects [a noncitizen] to mandatory detention, the charging document serves as notice to the [noncitizen] of the circumstances relied on by the [Department of Homeland Security] to detain him. However, where the basis for detention is not included in the charging document, the [noncitizen] must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing.

*Matter of Kotliar*, 24 I&N Dec. 124 (BIA 2007).

A Notice to Appear is the typical charging document in immigration proceedings. 8 C.F.R. § 1003.13; *see also* 8 U.S.C. § 1229(a)(1) (the Notice to Appear must specify "[t]he nature of the proceedings against the [noncitizen]," "the legal authority under which the proceedings are conducted," and "the acts of conduct alleged to be in violation of the law").

Taken together, where the government has failed to charge or notify a detainee of an offense covered by § 1182(a)(2), § 1226(c)(1)(A) does not govern their detention.

Here, Petitioner's Notice to Appear has a single basis for removability:

> 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an [noncitizen] present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

(ECF No. 6-3 at 1.)

Petitioner is charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen who arrived in the United States at a time or place other than as designated by the Attorney General.[8] (*Id.*) The Notice to Appear does not state that Petitioner is charged with inadmissibility under § 1182(a)(2), nor does it reference his criminal convictions. (*Id.*) In other words, the operative Notice to Appear does not charge or notify Petitioner of any offense giving

---

[8] Immigration and Nationality Act § 212 is codified at 8 U.S.C. § 1182.

rise to detention under 8 U.S.C. § 1226(c)(1)(A). (*Id.*) Respondents provide no other notice of detention authority. Nor do Respondents argue Petitioner was sufficiently notified or provide any authority for the proposition that the government may detain noncitizens under § 1226(c)(1)(A) without notifying them of the basis for mandatory detention. To permit otherwise would raise serious due process concerns.

Accordingly, the Court finds Petitioner is not properly subject to detention pursuant to 8 U.S.C. § 1226(c). *See Betancourt Ulloa v. Warden, California City Correctional Center*, No. 26-cv-03360-DAD-CKD, 2026 WL 2389805, at *2 (E.D. Cal. Aug. 17, 2026).

*ii. 8 U.S.C. § 1226(a)*

Respondents do not present any alternate bases of authority for detention.[9] However, having found 8 U.S.C. § 1226(c) does not govern, the Court determines Petitioner's detention is governed by 8 U.S.C. § 1226(a).

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1226 "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Detention pursuant to § 1226(a) is discretionary and noncitizens detained under such authority are entitled to a bond hearing. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026).

Petitioner lived in the United States for over six years when he was arrested by local law enforcement in Florida. (ECF No. 12 at 1–2.) Individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States" are subject to detention under 8 U.S.C. § 1226(a). *Rodriguez Vazquez*, 183 F.4th at 1165. Moreover, Petitioner is in standard removal proceedings. (ECF No. 6-3 at 1; 6-11 at 3.) The Court finds 8 U.S.C. § 1226(a) applies. Thus, Petitioner is entitled to the procedural safeguards afforded by 8 U.S.C. § 1226(a).

---

[9] In Respondents' first Answer, they argued Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b). (ECF No. 6 at 7–8.) Following the Ninth Circuit's ruling in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, (9th Cir. 2026), Respondents amended their position to Petitioner's detention being subject solely to 8 U.S.C. § 1226(c)(1)(A). (ECF No. 15 at 2.)

B. Fifth Amendment Due Process Clause

Petitioner alleges his detention without a pre-deprivation hearing violates due process. (ECF No. 12 at 14–15.) Respondents argue in the event the Court determines 8 U.S.C. § 1226(a) applies, the appropriate remedy is a bond hearing. Having determined § 1226(a) applies, the Court finds a bond hearing is an insufficient remedy for the due process violation imposed on Petitioner. Rather, the appropriate remedy is release.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-

01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (citation omitted).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released by immigration authorities in July 2019. (ECF Nos. 6-4, 6-5.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings. *Morrissey*, 408 U.S. at 482. Even if he is ultimately removable, or his liberty is revocable, his established liberty interest is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

As this Court has found previously, along with many other courts in this District when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]" *Hernandez*, 872 F.3d at 981. Thus, Petitioner has a liberty interest protected by the Due Process Clause.

*ii) Procedures Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Despite Petitioner's strong liberty

interest found above, Petitioner has been detained, separated from his family and community, and unable to work for over a year without notice or an opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received no procedural safeguards such as a bond or custody redetermination hearing. *See H.F. v. Albarran*, No. 1:25-cv-01795-TLN-EFB, 2025 WL 3691081, at *5 (E.D. Cal. Dec. 19, 2025) (finding risk of erroneous deprivation to be considerable "particularly" where "Petitioner has already been released from incarceration twice: first from immigration detention on his own recognizance, and second from criminal detention").

Petitioner's criminal history does not alter the Court's conclusion. In August 2024 Petitioner pled nolo contendre to criminal mischief, petit theft, grand theft, pawnbroker transaction fraud, grand theft and two counts of burglary. (ECF No. 6-7 at 1.) Petitioner was sentenced to thirty-six months of probation. (ECF No. 6 at 2; 6-7 at 1; ECF No. 6-8 at 1–3.) While the Court does not discount the seriousness of Petitioner's offenses, the convictions on their own do not equate to present danger. *See Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (noting "not all criminal convictions conclusively establish that a[ ] [noncitizen] presents a danger to the community, even where the crimes are serious enough to render the [noncitizen] removable."). Furthermore, Respondents do not argue Petitioner is a danger to the community, instead arguing his "multiple serious felony convictions" warrant a bond hearing, rather than immediate release. Without a dangerousness argument or flight risk concern, and Petitioner having been in detention for over a year, the Court finds Petitioner's criminal convictions do not alter his risk of erroneous deprivation.

8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The statute provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially

change." *Id.* at 1202.

Petitioner did not receive the requisite extensive procedural protections of 8 U.S.C. § 1226(a). There is no evidence in the record that Respondents provided Petitioner an initial custody determination, nor provided the basis for his detention. *See Zurita Navarro* v. *Warden Ctrl. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (collecting cases and enumerating procedural violations of § 1226(a), including "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention," and "failure to provide the petitioner with the basis for the petitioner's continued detention"). The Court therefore concludes the risk that Petitioner is erroneously being deprived of liberty is considerable.

Finally, as to the third *Mathews* factor — government interest — the cost and time of procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents, indeed, they are the very safeguards owed to Petitioner by statute. Nor do Respondents argue they would be burdened.

Upon consideration of the *Mathews* factors, due process required notice and a hearing as to Petitioner's detention. Respondents have not provided sufficient notice or any hearing either pre- or post-detention in over a year of custody. Petitioner's detention thus violates the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 12.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Michel G.B. (A# 203-754-003) from custody on the same conditions of his prior release. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents must file a **notice certifying compliance** with this provision of the Court's Order **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner,

while subject to 8 U.S.C. § 1226, absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that: (1) Petitioner is subject to 8 U.S.C. § 1226(c) after issuing a proper charge for covered offenses, or (2) the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's letter to the Court is STRICKEN from the docket. (ECF No. 17.)

4. Petitioner's Motion for TRO is STRICKEN from the docket. (ECF No. 18.)

5. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order**.

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE